# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TESSA N. ROBNETT, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-15-362-CG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|     **Defendant.**[1] | ) |

## OPINION AND ORDER

Plaintiff Tessa N. Robnett brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record[2] and the arguments and authorities submitted by the parties, the Court concludes that the Commissioner's final decision should be reversed and this matter remanded for further proceedings.

---

[1] Nancy A. Berryhill, the current Acting Commissioner, is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g).

[2] Citations to the administrative record (Doc. No. 11) are as "R. __," using the pagination assigned by the SSA in the certified copy of the transcript. Citations to other documents filed in this Court use the pagination assigned by CM/ECF.

# PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her SSI application on November 24, 2008, alleging disability because of fibromyalgia, depression, and thyroid problems beginning in February 2008. R. 420-23, 450, 455. Following denial of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge John Volz (referred to herein as "ALJ Volz") on February 25, 2010. R. 240-66. ALJ Volz issued an unfavorable decision on March 18, 2010. R. 278-87. In February 2012, the SSA Appeals Council vacated ALJ Volz's decision and remanded Plaintiff's case for reconsideration in light of new and material evidence related to her alleged mental impairment. R. 292-94.

ALJ Lantz McClain (referred to herein as "the ALJ") held a hearing on March 4, 2013, at which Plaintiff and a vocational expert ("VE") testified. R. 187-213. On July 1, 2013, the ALJ held a supplemental hearing "to obtain the benefit of a medical expert['s]" opinion regarding Plaintiff's mental impairments and limitations. R. 175-85. Ashok Khushalani, a board-certified psychiatrist, testified at the hearing as a medical expert after reviewing Plaintiff's medical records available through May 2012. R. 178-84, 419. The ALJ issued an unfavorable decision on August 30, 2013. R. 159-69.

As relevant here, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a). The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v.*

*Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 24, 2008. R. 161. At step two, the ALJ found that Plaintiff had "the following severe impairments: obesity, back pain, fibromyalgia, bipolar disorder, and a personality disorder, unspecified." R. 161. At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 161-63.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 163-68. He found that Plaintiff's RFC allowed her to perform light work, subject to certain limitations. R. 163, 169. More specifically, and as relevant to this appeal, the ALJ found that Plaintiff "is able to perform simple, repetitive tasks, relate to supervisors and co-workers only on a superficial basis and should not work with the public." R. 163; *see* Pl.'s Br. (Doc. No. 16) at 2-11. At step four, the ALJ found that Plaintiff had no relevant past work experience. R. 168.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 168-69. Relying on the VE's testimony concerning the degree to which Plaintiff's "additional limitations" eroded the unskilled light occupational base, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as housekeeping cleaner or merchandise marker. R. 169; *see* R. 207-11. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of

3

the Social Security Act between November 24, 2008, and August 30, 2013. R. 159, 169. The Appeals Council declined to review that decision, R. 1, and this appeal of the Commissioner's final decision followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff argues on appeal that the ALJ did not properly consider all of the relevant evidence regarding the limitations caused by Plaintiff's mental impairments, including by

4

failing to give sufficient weight to opinions of treating psychiatrist Alzira Vaidya, MD, and placing undue reliance on opinions of nonexamining medical expert Ashok Khushalani, MD. Plaintiff further argues that, as a result of these errors, the ALJ's mental RFC determination is not supported by substantial evidence in the record. *See* Pl.'s Br. at 2-11; Pl.'s Reply Br. (Doc. No. 23) at 1-3.

### A. *Evaluation of Medical Source Opinions*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 416.902, .913(a). The Commissioner generally gives the greatest weight to the medical opinions of a "treating source," which includes a physician or psychiatrist who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating source, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *1-4 (July 2, 1996). The opinion of a treating source is given such weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *2 ("[W]hen all of the factors are satisfied, the [ALJ] must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion.").

A treating source opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. § 416.927(c)(2)-(6). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

The ALJ also must weigh other medical source opinions using the relevant factors, keeping in mind that "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the [claimant] become weaker." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996); *see also* 20 C.F.R. §

416.927(c)(3), (e). Relevant here, the weight an ALJ assigns to the opinion of a physician or psychiatrist who did not examine the claimant "will depend on the degree to which [these sources] provide explanations for their opinions" and "the degree to which these opinions consider all of the pertinent evidence in [the record], including opinions of treating and other examining sources." 20 C.F.R. § 416.927(c)(3). Indeed, nonexamining source opinions "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence" and the other regulatory factors. SSR 96-6p, 1996 WL 374180, at *2; *see also Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) ("It follows that if the ALJ relies heavily on such opinions . . . the opinions must themselves find adequate support in the medical evidence." (citing SSR 96-6p, 1996 WL 374180, at *2)). Again, the ALJ "must explain the weight he is giving to" a nontreating source opinion if the ALJ relies on that opinion. *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004); *accord* 20 C.F.R. § 416.927(e)(2)(ii).

### B. Dr. Vaidya's Treatment of Plaintiff and Opinions Regarding Her Mental Limitations

To be entitled to SSI, Plaintiff must show that she was "disabled" between November 24, 2008, the date she filed her application, and August 30, 2013, the date the ALJ issued his decision. R. 159, 169; *see Romero v. Barnhart*, 135 F. App'x 172, 175-76 (10th Cir. 2005) (citing 20 C.F.R. §§ 416.330, .335, .1476(b)(1)). Plaintiff's medical records document a history of depression, anxiety, bipolar disorder, and maladaptive, impulsive behavior. *See generally* R. 564, 665, 693-716, 717-19, 911-27, 960, 972-73, 1021-25, 1030-37. Her healthcare providers have prescribed various combinations of

7

psychotropic medications, as well as counseling and coping-skills training, to manage those conditions since at least December 2006. *See, e.g.*, R. 638-40, 651-53, 660-64, 668-70, 947, 950, 955, 958, 970 (medication only); R. 697-98, 700, 717-18, 719-20, 852-58, 882-86, 908-09, 911-27, 1021-22, 1026-29, 1030-37 (medication and counseling).

On March 31, 2009, Plaintiff went to Edwin Fair Community Mental Health Center ("Edwin Fair") because she was "having difficulty dealing with daily functioning." R. 717. After initial intake evaluations on that date and in early June 2009,[3] Plaintiff was seen by Edwin Fair psychiatrist Dr. Vaidya on June 9, 2009. R. 719. Dr. Vaidya noted that Plaintiff had recently been discharged from the Oklahoma County Crisis Intervention Center ("OCCIC") with prescriptions for Abilify, Trazodone, and Prozac but that Plaintiff did "not appear medication compliant." R. 719; *see also* R. 704, 1034 (noting a three-day hospitalization at OCCIC after Plaintiff attempted suicide in January 2009). A mental-status exam was normal except for Plaintiff's "anxious" mood and "constricted" affect. R. 719. Dr. Vaidya refilled Plaintiff's medications. R. 719-20. Plaintiff saw Dr. Vaidya again in July and September 2009. R. 857, 856. During this period, Dr. Vaidya continued to prescribe Abilify, Trazodone, and Prozac. *See* R. 856.

In March 2010, Dr. Vaidya endorsed two functional assessment forms prepared by an Edwin Fair case manager. R. 1021-22, 1024-25 (Exs. 26F, 27F); *see also* R. 165, 167

---

[3] At the first intake evaluation, on March 31, 2009, Eldon Johnson, LPC, observed that Plaintiff exhibited "symptoms of depression and mania." R. 717. At the second evaluation, in June 2009, Susan Adkins, LADC, diagnosed Plaintiff with "bipolar affective disorder, manic, severe, without mention of psychotic behavior." R. 692, 697-700.

8

(the ALJ finding that Dr. Vaidya "signed off" on these assessments). Through the assessment forms, Dr. Vaidya opined that Plaintiff's bipolar disorder, severe depression, and "other suspected mental condition," R. 1022, caused *marked* limitations in Plaintiff's ability to:

- understand, remember, and execute very short and simple instructions;
- interact appropriately with the general public;
- accept instructions and respond appropriately to criticism from supervisors; and
- respond appropriately to changes in the work setting;

and *extreme* limitations in Plaintiff's ability to:

- maintain attention and concentration for extended periods;
- complete a normal workday and workweek without interruptions from psychologically based symptoms;
- perform at a consistent pace without an unreasonable number and length of rest periods; and
- get along with coworkers or peers without distracting them or exhibiting behavior extremes.

*See* R. 1024-25. The March 2010 assessments elaborated on Plaintiff's "problems with disorganized thought processes, concentration, impulse control, memory, and obsessions," stating that Plaintiff

> has problems with her cognitive thought processes [as evidenced by] racing thoughts and paranoia. Tessa is unable to complete a task due to her mind frequently wandering. Tessa feels safe at home and therefore does not like to leave due to the stress, anxiety, and paranoia she feels when in public. She also has problems with impulse control and her judgment. Tessa has difficulties thinking things through before she makes decisions.
> 
> . . . .
> 
> Tessa primarily stays at home, only leaving when it is absolutely necessary for such things as grocery shopping. Tessa's daily activities consist of sleeping, eating, and playing videogames. Tessa reports that she does not

9

have any interests and lacks the motivation and energy to participate in
recreational activities.

R. 1021. Noting that Plaintiff's "prognosis for recovery [was] low" because she has had "mental health problems since she was a child," the March 2010 assessments stated that "a small degree" of "improvement may be seen with medication." R. 1021-22.

Plaintiff next returned to Dr. Vaidya's office on July 13, 2010. R. 883. Dr. Vaidya noted that Plaintiff did "not appear medication compliant" and that Plaintiff reported she had stopped taking Abilify. R. 883; *see also* R. 1038. Dr. Vaidya observed that Plaintiff's mental status was within normal limits except for her "depressed" and "anxious" mood. R. 883. Dr. Vaidya prescribed a new bipolar medication, Lamictal, and refilled Plaintiff's Trazodone. R. 883.

After an absence,[4] Plaintiff reestablished care at Edwin Fair on August 23, 2011. *See* R. 911-23. Plaintiff reported psychiatric symptoms and behavioral problems similar to those she reported at her intake interviews in March and June 2009. *Compare* R. 911-13, *with* R. 694-97, 704, 707. Plaintiff saw Dr. Vaidya on September 13, 2011. R. 927. Plaintiff reported that she had been off her medications for six months. R. 927. On exam, Dr. Vaidya observed that Plaintiff exhibited a "pressured" speech pattern, a "labile" affect, and an "irritable" mood, and appeared to be hallucinating. R. 927. Dr. Vaidya prescribed

---

[4] During this period, Plaintiff was seen by David Reinecke, MD, a physician at the Perkins Family Clinic. *See* R. 927, 947, 950-52, 958, 960-61, 970-71. In addition to treating Plaintiff for physical conditions, Dr. Reineke prescribed Plaintiff the psychotropic medications Depakote, Trazodone, Prozac, and Bupropion. *Id.* In his decision, the ALJ summarized only those portions of Dr. Reinecke's treatment records related to Plaintiff's alleged physical impairments. R. 165-66.

Lamictal and Seroquel. *See* R. 927. Plaintiff next saw Dr. Vaidya in November 2011. R. 925. Plaintiff reported that she had stopped taking Seroquel "because it made her sick to [her] stomach." R. 925; *see also* R. 1038. A mental-status exam was normal in all respects. R. 925. Dr. Vaidya increased Plaintiff's Lamictal dosage. R. 925.[5]

On February 23, 2012, Plaintiff was discharged from Edwin Fair's care due to lack of contact with the facility. R. 908-09. Plaintiff returned to Edwin Fair on April 22, 2013. R. 1030-34, 1037. At that time, she reported psychiatric symptoms and behavioral problems similar to those she had reported in 2009 and 2011. *Compare id.*, *with* R. 694-97, 704, 707 (Mar. and June 2009), *and* R. 911-13 (Aug. 2011).[6] Plaintiff reported that she had not taken any psychotropic medications for ten months. R. 1033, 1037 (Ex. 28F). Plaintiff saw Dr. Vaidya on April 30, May 2, and May 30, 2013. R. 1027-29. Mental-status exams conducted on all three visits were mostly within normal limits, and Plaintiff reported that she took her medications as prescribed after Dr. Vaidya refilled them on April

---

[5] On December 2, 2011, an Edwin Fair case manager completed another functional assessment form concerning Plaintiff's mental impairments. R. 885-86 (Ex. 20F). This assessment does not reflect that it was endorsed by Dr. Vaidya or any acceptable medical source within the meaning of SSA regulations. *Id.*; *see Fulton v. Colvin*, 631 F. App'x 498, 503 (10th Cir. 2015) (noting that a mental-health case manager is a nonacceptable medical source). The case manager opined that Plaintiff's bipolar disorder and recently diagnosed "panic disorder without agoraphobia" caused limitations in Plaintiff's ability to focus, interact with others, adapt to changes in her routine, and handle stress appropriately. R. 885-86, 911. The assessment noted that Plaintiff's "prognosis for recovery [was] low" and only a "small degree" of improvement could be expected with medication. R. 886.

[6] After an intake evaluation, an unidentified Edwin Fair employee diagnosed Plaintiff with bipolar disorder and an "[u]nspecified personality disorder." R. 1035.

30, 2013. *See* R. 1027 (no abnormal findings noted), 1028 (noting only "irritable" mood and "labile" affect), 1029 (noting only "pressured" speech).[7]

### C. The ALJ's Findings

The ALJ gave "little weight" to the opinion of Dr. Vaidya, as stated through the March 2010 assessments, that Plaintiff's mental impairments caused marked and extreme limitations. R. 167. The ALJ explained:

> [T]he claimant's case manager competed a mental status form on March 9, 2010, which indicated the claimant had extreme and marked limitations.

---

[7] Plaintiff submitted additional records to the Appeals Council with her request for review. R. 2; *see* R. 41-55, 57-71, 73-87 (Edwin Fair prior-authorization requests dated October 9, 2013, April 11, 2014, and October 22, 2014). The Appeals Council determined that these records did not relate to the period prior to the ALJ's August 30, 2013 decision, and instructed Plaintiff to submit a new application if she wanted the agency "to consider whether [she was] disabled" after that date. R. 2. Contrary to Plaintiff's assertion, the Court is not required to "consider this evidence in its review" of the Commissioner's final decision simply because Plaintiff *submitted* these post-dated records to the Appeals Council. Pl.'s Br. at 6 (citing *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2008)). In *Martinez*, the Tenth Circuit stated that certain later-submitted records were "'part of the administrative record to be considered [by this court] when evaluating [the ALJ's] decision for substantial evidence'" only "[b]ecause the Appeals Council 'considered'" those records when it denied the claimant's request for review. *Martinez*, 444 F.3d at 1208 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). The Appeals Council in this case, however, stated that it declined to consider Plaintiff's additional treatment records due to their lack of relevance. *See* R. 2; 20 C.F.R. § 416.1470(b) (2014). Because Plaintiff does not challenge on appeal the Appeals Council's determination that Plaintiff's additional evidence was not chronologically relevant, Pl.'s Br. at 6, Plaintiff has forfeited her opportunity to have the Court review that determination. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("Whether evidence qualifies as new, material and chronologically relevant is a question of law subject to our de novo review. If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. . . . [I]f the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." (internal citations, quotation marks, and brackets omitted)); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that the plaintiff must "frame and develop" an objection to the Commissioner's decision in a manner "sufficient to invoke appellate review").

> (Exhibit 26F and 27F). Dr. Vaidya did sign off on these forms. However, these are contradicted by their own most recent treatment notes, which stated, "moderate intensity of problems reported" in April . . . 2013 (Exhibit 28F, page 5). The opinions in Exhibits 26F and 27F are given little weight due to the inconsistencies within these records.

R. 167 (quoting R. 1030). In so finding, the ALJ also relied on the opinion of nonexamining consultant Dr. Khushalani, giving that opinion "great weight." R. 166, 168.[8]

Ultimately, the ALJ included in the RFC the mental limitations that Plaintiff could "perform simple, repetitive tasks," "relate to supervisors and co-workers only on a superficial basis," and "should not work with the public." R. 163. The ALJ stated that this RFC accommodated severe "mental impairments [that] are moderate in nature" and was "supported by" Dr. Khushalani's testimony and the Edwin Fair records "as indicated" in his written decision. R. 168.

> *D. Whether the ALJ's Evaluation of Dr. Vaidya's Opinions Complied with the Relevant Legal Standards and Is Supported by Substantial Evidence*

As noted, the regulations set out a mandatory standard for weighing medical source opinions about a claimant's impairments. *See Watkins*, 350 F.3d at 1300-01; 20 C.F.R. § 416.927(c). The ALJ's decision falls short of that standard—and the corollary requirement that each finding be supported by substantial evidence—in several respects.

First, the decision does not reflect whether the ALJ recognized that the opinions in the March 2010 assessments were those of a treating psychiatrist. Properly evaluating a

---

[8] The ALJ also gave "little weight" to the opinions stated in the December 2011 assessment completed by an Edwin Fair case manager. R. 167. The ALJ stated that this assessment's conclusion that Plaintiff's "condition was severe" was "in contrast to the recent treatment records" in Exhibit 28F. R. 167.

13

medical opinion requires the ALJ to determine who gave the opinion, whether that person is an "acceptable medical source," and if so whether that source's "treatment relationship" with the claimant might entitle his or her medical opinion to special deference under the regulations. *See Doyal*, 331 F.3d at 762-63; 20 C.F.R. § 416.927(c)(2); *cf. Winick v. Colvin*, 2017 WL 33544, *2, *3-4 (10th Cir. Jan. 4, 2017) (rejecting possibility of harmless error where ALJ misidentified one of claimant's physicians "as an examining, rather than a treating" source). Plaintiff asserts that Dr. Vaidya was her "treating" psychiatrist at the time the March 2010 assessments were made, having seen Plaintiff at least three times before that date. *See* Pl.'s Br. at 6; R. 719-20, 856, 857; *see also* 20 C.F.R. §§ 416.902, .927(c)(2). Defendant Commissioner does not dispute that assertion. *See* Def.'s Br. (Doc. No. 21) at 14-17. And the Tenth Circuit has held that a functional assessment prepared by a case manager and signed by a psychiatrist must, absent evidence to the contrary, be considered the medical opinion of the psychiatrist and afforded the level of deference otherwise appropriate under the regulations. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1251-52 (10th Cir. 2002) (recognizing assessment prepared by case manager and undisputedly endorsed by treating psychiatrist as treating source opinion and finding ALJ erred by rejecting opinion based upon "unfounded doubt that [the psychiatrist] agreed with the assessment he signed"). While the ALJ acknowledged that Dr. Vaidya had "sign[ed] off on" the March 2010 assessments, he at no point recognized that the opinions in those assessments must be considered as those of a treating source. R. 167. Nor can the undersigned infer such recognition through the discussion that the ALJ did provide, which omits the question of whether Dr. Vaidya's opinions were entitled to controlling weight

14

and reflects no difference in the approaches applied to weigh the March 2010 assessments (presumptively a treating source opinion) and the testimony of Dr. Khushalani (a nonexamining medical source opinion), or for that matter the December 2011 case manager assessment (a nonacceptable medical source opinion). R. 167-68.

Second, the ALJ's reliance on Dr. Khushalani's July 2013 testimony is flawed. Dr. Khushalani testified that Plaintiff can "do simple tasks" and can have only "occasional public contact." R. 180. *Compare id.*, *with* R. 168 (RFC determination that Plaintiff can "perform simple, repetitive tasks"; can "relate to supervisors and co-workers only on a superficial basis"; and cannot "work with the public"). Because Dr. Khushalani did not examine Plaintiff, the ALJ could credit his opinions "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180, at *2; *see also Lee*, 117 F. App'x at 678. Dr. Khushalani stated that he based his opinions on the December 2011 case manager assessment, which Dr. Khushalani said "suggests some amount of progress, perhaps with medications and compliance" when compared to the marked and extreme limitations assessed by Dr. Vaidya in March 2010. R. 180-82. Dr. Khushalani stated that his opinions followed the December 2011 assessment "exactly," R. 181, but that assessment includes additional and greater limitations, e.g., that Plaintiff cannot "concentrate for longer than 15 minutes on work related items," "has the ability to follow simple instructions for only a short amount of time," "has severe memory problems," if stressed "will yell at coworkers and become violent," and will "yell at others if [s]he starts to feel overwhelmed or act out violently." R. 885-86. Even if the December 2011 assessment was accepted as proof of progress from March 2010 to December 2011—rather

15

than the two being considered as separate opinions, one entitled to deference as that of a treating psychiatrist and the other issued by a person who the regulations do not credit as an "acceptable medical source," 20 C.F.R. § 416.913(a)—the progress shown was not sufficient to constitute "support in the case record" for Dr. Khushalani's nonexamining opinion.[9]

Third, the record does not support the ALJ's conclusion that certain observations and reports made at Edwin Fair in April and May 2013 are "inconsistent" with Dr. Vaidya's March 2010 assessments such that they "indicate that [Plaintiff's] mental status ha[d] improved" since March 2010. *See* R. 167. The ALJ sets forth the following specific examples of such "inconsistencies":

- In April 2013, Plaintiff "lived in an apartment with her boyfriend, which indicated she was not completely socially isolated and [had] an ability to be around others when she was motivated. She and her boyfriend watched movies, played video games and listened to music, all of which indicated a capacity to perform simple tasks when motivated."

- In April 2013, Plaintiff "indicated she suffered from mood lability, [poor] coping skills, suicidal ideation, depression, anger, anxiety, euphoria, change in appetite, and sleep patterns[,] all of which were reports of moderate

---

[9] Dr. Khushalani also expressed doubt about whether the medical records before him were sufficient to allow him to render an opinion:

It is very difficult for me to give an opinion because the record is very inconsistent and it does not really flow as to whether she's in treatment, whether she's responding to treatment. There[ are] no records after May of 2012. I don't know what (INAUDIBLE) but there are no records of observation. I just have a mental residual function filled out by a case manager.

R. 180. *But see* R. 179 (Dr. Khushalani's testimony that he reviewed Exhibits 1F through 27F, which contain Dr. Vaidya's and other Edwin Fair providers' observations of Plaintiff's mental status on eight visits between March 31, 2009, and November 1, 2011, as well as the December 2011 case manager assessment).

16

- intensity. [Plaintiff] also reported she had not taken her medications for 10 months."
- "The prognosis was good and measurable improvement in functioning was expected during the initial authorization period."
- On April 30, 2013, Plaintiff's "speech was still pressured, but her physical appearance appropriate, her mood normal, her affect appropriate, her thoughts intact and oriented times three, delusion or hallucinations were absent, interaction was cooperative and sleep and appetite were normal." On May 2, 2013, Plaintiff's "speech was normal, mood irritable, affect labile, thoughts intact and oriented times three, delusions and hallucinations were absent, interaction cooperative, sleep decreased and appetite normal." On May 30, 2013, Plaintiff's "speech was normal, mood normal, affect appropriate, thoughts intact and oriented times three, delusions and hallucinations were absent, sleep decreased and appetite normal."

R. 167 (internal quotation marks omitted) (citing R. 1027-29, 1030-31, 1033, 1037).[10]

Almost all of these cited observations and reports from April and May 2013 are similar to corresponding observations and reports made at the time of the March 2010 assessments. Plaintiff's April 2013 living arrangement and daily activities cited by the ALJ are comparable to what Plaintiff reported in the months before Dr. Vaidya's March 2010 assessments. *See* R. 709 (June 3, 2009 report that Plaintiff was "[l]iving with friends and has a boyfriend"), 1021 (March 2010 assessment noting that Plaintiff rarely left residence and had few daily activities other than playing videogames). While an unknown Edwin Fair employee noted in the April 2013 intake evaluation that Plaintiff experienced

---

[10] The ALJ stated that he gave these Edwin Fair treatment records "great weight." R. 167. To the extent these records present Plaintiff's self-reports, the ALJ's assignment of weight was unnecessary. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (noting that an ALJ is "not required to assign a weight to [a provider's] narrative of statements relayed to him by" the claimant because such summaries are not medical source opinions).

17

"moderate" problems in various areas, the same is true for the intake evaluation made at Edwin Fair in March/June 2009. R. 692-93. And on both of those occasions the evaluator assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50, which represents "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." R. 693, 1035; Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) (*DSM-IV*). Both intake evaluations also contain the same quoted language: "The prognosis is good and measurable improvement in functioning is expected during this initial authorization period." R. 696, 1037. Finally, the observations that the ALJ cites from the April and May 2013 treatment sessions at Edwin Fair regarding a positive mood and affect also appear in notes from before and after Dr. Vaidya's March 2010 assessments. *See* R. 857 (July 21, 2009 progress note), 883 (July 13, 2010 progress note).

A finding that a claimant's medical condition "later improve[d]" can be a valid reason to afford little weight to a treating source's earlier, more restrictive medical opinion. *Kruse v. Astrue*, 436 F. App'x 879, 882-83 (10th Cir. 2011). That finding, however, must be supported by substantial evidence. "'In choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'" *McGoffin*, 288 F.3d at 1252 (emphasis omitted) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Here, the observations and reports cited by the ALJ do not by

themselves reflect a change of condition so clear or significant as would support the ALJ's decision to give little weight to Dr. Vaidya's March 2010 assessments.[11]

CONCLUSION

In sum, the ALJ's analysis of the March 2010 assessments of Dr. Vaidya failed to follow proper legal standards and relied on findings not supported by substantial evidence in the record. The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 13th day of February, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

[11] The ALJ's finding of improvement is also undermined by the facts that: (1) in a slight but significant difference of interpretation, the ALJ characterizes Dr. Khushalani's testimony as that "the claimant becomes better and more stable mentally . . . when she is compliant," R. 168, but what Dr. Khushalani actually stated is that the specific limitations identified in the 2011 case manager assessment "*should* stabilize" if Plaintiff is in treatment, R. 180-81 (emphasis added); and (2) one of the longest periods of treatment and medication compliance reflected in the record is July 2009 to March 2010, i.e., immediately prior to Dr. Vaidya's March 2010 assessments, *see* R. 167, 856, 857; Def.'s Br. at 17.